IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CPC PROPERTIES, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DOMINIC, INC., | : | No. 12-4405 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                                           February 25, 2013

Presently before the Court is the petition for attorneys' fees, expenses, and costs of Plaintiff CPC Properties, Inc. ("CPC"). For the reasons that follow, Plaintiff's petition is granted. Specifically, Plaintiff is awarded $12,470 in fees and $889.25 in costs.

I. BACKGROUND

This petition for fees arises out of a trademark dispute between CPC and Dominic, Inc. ("Dominic"). On August 3, 2012, CPC sued Dominic for trademark infringement, false designation of origin, common law service mark infringement, unfair competition, unjust enrichment, and trademark dilution arising out of a trademark CPC holds on "CRAB FRIES," which it sells at Chickie's & Pete's restaurants. CPC alleged that Dominic, which owns and operates the restaurant Tony's Place, has violated the trademark by using an image of a crab before the word "fries" in advertisements for Tony's Place and on its menus. (Compl. ¶¶ 31-33.) After CPC moved for a preliminary injunction, the parties entered into a Stipulated Preliminary Injunction ("Stipulated PI") on August 9, 2012, in which Dominic agreed not to use the words "crab fries" in its sales or

1

advertising, and specifically to remove or obstruct any image of a crab near fries from its menus immediately, remove such images from its website by August 13, 2012, cancel advertisements using the image immediately, and remove menus featuring even an obstructed crab image from circulation by October 1, 2012. (Stipulated Prelim. Inj. on Consent and Order at 2-3.)

CPC subsequently discovered several violations of the agreement, in spite of defense counsel's assurances that Tony's Place was in full compliance. (Mem. of Law in Supp. of Pl.'s Mot. for Contempt and for an Order to Show Cause at 11-12.) CPC notified the Court of these violations in a motion for contempt against Dominic filed on September 6, 2012. CPC asserted that takeout menus and online menus continued to use the crab image and that "crab fries" continued to appear on customer receipts. (*Id.* at 14.) CPC then filed a supplement to its motion for contempt on October 4, 2012, noting that Tony's Place had not replaced the old menus featuring obstructed crabs, as the Stipulated PI required. (Supplement to Pl.'s Mot. for Contempt and an Order to Show Cause at 2-3.) After a teleconference with the Court and the parties, CPC sent a status report letter to the Court on October 23, 2012, which claimed continuing violations of the Stipulated PI because Tony's Place was still accepting orders for crab fries from customers. Dominic responded on November 2, 2012. The Court granted CPC's motion, found Dominic in civil contempt, and additionally required CPC to file a motion for attorneys' fees and costs associated with policing Dominic's violations.

CPC now seeks $15,381 in attorney and paralegal fees and $889.25 in costs and expenses. (Mot. and Pet. of Pl. for an Award of Reimbursement of Pl.'s Att'ys Fees, Expenses and Costs [Pet. for Fees] ¶¶ 11-12.) Dominic argues in its response to CPC's petition for attorneys' fees that violations of the Stipulated PI were inadvertent, that Dominic was largely in compliance at the time of the response, and that the manager of Tony's was having severe health problems. (Def.'s Resp.

to Pet. for Fees ¶¶ 6, 8, 10-12.) Dominic did not challenge the reasonableness of CPC's attorneys' billing rates or time expended. (*See id.*)

CPC has been represented by attorneys John O'Malley and Michael Snyder, shareholders of the law firm Volpe and Koenig, P.C. (Pet. for Fees Ex. A [O'Malley Decl.] ¶ 1; *id.* Ex. B [Snyder Decl.] ¶ 1.) O'Malley's billing rate is $380 per hour, and Snyder's is $390 per hour. (O'Malley Decl. ¶ 13.) They also employed the services of a paralegal who bills at the rate of $120 per hour. (*Id.*)

**II.    DISCUSSION**

"Attorneys' fees may be imposed as a civil contempt sanction to compensate the aggrieved party." *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2012 WL 2912332, at *37 (E.D. Pa. July 16, 2012) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994)); *see also Hutto v. Finney*, 437 U.S. 678, 691 (1978) ("Civil contempt may also be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance.") (citations omitted). When "awarding fees in the contempt context . . . , the innocent party is entitled to be made whole for the losses it incurs as the result of the contemnors' violations, including reasonable attorneys' fees and expenses." *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 941 (3d Cir. 1995) (citations omitted). Because the Court found Dominic in civil contempt due to its violations of the Stipulated PI, it is appropriate to award attorneys' fees and costs to compensate CPC for its expenses in policing the violations.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted)); *see also Halderman*, 49 F.3d at 942, 944 (using this method to evaluate award of attorneys' fees for contempt proceeding). The reasonable hourly rate is generally calculated based on the prevailing market rates in the community. *Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)). "The party seeking fees bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) (citation omitted). This party also "bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005) (alteration and omission in original) (quoting *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (internal quotation marks omitted)). If the fee petitioner carries its burden, the other party "may contest that prima facie case only with appropriate record evidence. In the absence of such evidence, the [fee petitioner] must be awarded attorney's fees at her requested rate." *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (citing *Washington*, 89 F.3d at 1035-36, *Cunningham v. City of McKeesport*, 807 F.2d 49, 52-53 (3d Cir. 1986), and *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)).

The Court must thus assess whether CPC has met its initial burden by presenting "satisfactory evidence, in addition to [the attorneys'] own affidavits," that the requested hourly rates are consistent with reasonable market rates in Philadelphia for "the essential character and

4

complexity of the legal services rendered." "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). Here, CPC's attorneys' usual billing rates were $380 and $390 per hour. (O'Malley Decl. ¶ 13.) CPC submits in support of the reasonableness of these rates the Community Legal Services of Philadelphia's attorneys' fees schedule ("CLS Schedule"), which sets forth a range of reasonable rates from $305 to $350 for attorneys with O'Malley and Snyder's experience level of sixteen to twenty years. (*See* Pet. for Fees Ex. C [CLS Schedule]; O'Malley Decl. ¶ 7; Snyder Decl. ¶ 7.) However, O'Malley and Snyder's billing rates are higher than the upper end of the CLS range, so this submission does not establish that CPC's attorneys' billing rates are consistent with prevailing market rates in Philadelphia. *See Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001) ("deny[ing] the hourly rates that are inconsistent" with CLS Schedule rates). CPC has additionally submitted the average billing rates of partners at the five law firms with a principal office in Philadelphia on the National Law Journal's Billing Survey of the largest 250 law firms in order to demonstrate that the hourly rates CPC seeks are below these billing rates. (O'Malley Decl. ¶ 17.) A sampling of the billing rates of the largest five firms in the region says little about the prevailing market rates in the Philadelphia region overall, however. *See Bakery, Confectionary, Tobacco Workers & Grain Millers Int'l Union v. Morabito Baking Co.*, Civ. A. No. 10-5141, 2012 WL 4050796, at *2 (E.D. Pa. Sept. 14, 2012) ("[T]his survey of law firm billing rates includes only a select few large law firms in Philadelphia."); *see also FTC v. Circa Direct LLC*, 2012 WL 6568417, at *3, *6 (D.N.J. Dec. 17, 2012) (refusing to rely on survey to determine billing rates and noting survey

does not indicate "whether the type of work performed by the firms was similar to the work performed here in nature or complexity").

Because neither submission in support of the attorneys' hourly rates persuades the Court that the suggested rates are consistent with prevailing market rates, only O'Malley's own affidavit characterizing the rates as "prevailing and customary" remains. (O'Malley Decl. ¶ 13.) Where "the only evidence submitted regarding the prevailing rate in the local legal community was the self-serving declaration from [the fee applicant's] lead counsel,"a fee petitioner may not satisfy its initial burden. *Plan Adm'r v. Kienast*, Civ. A. No. 06-1529, 2008 WL 1981637, at *5 (W.D. Pa. May 2, 2008); *see also Kurschinske v. Meadville Forging Co.*, Civ. A. No. 06-87, 2008 WL 4462294, at *3 (W.D. Pa. Sept. 30, 2008).

If the fee applicant does not carry its burden, "the district court must exercise its discretion in fixing a reasonable hourly rate." *Washington*, 89 F.3d at 1036 (citation omitted). The Court finds that CPC is entitled to recover attorneys' fees for O'Malley and Snyder at an hourly rate of $305. This rate is within the range prescribed by the CLS Schedule, which the Third Circuit has relied on as an indicator of prevailing market rates in Philadelphia. *See Maldonado*, 256 F.3d at 187-88. The Court further notes that the time spent by CPC's attorneys on this matter was only tangentially related to their specialty in complex intellectual property questions and focused instead almost exclusively on the less complicated tasks of investigating Dominic's violations of the Stipulated PI and researching case law on contempt. (*See* O'Malley Decl. Ex. A [Billing Records]; *id.* Ex. B [Invoice].) For that reason, the Court finds that the reasonable billing rate for litigating this specific issue is at the lower end of the CLS Schedule range. *See Huu Nam Tran v. Metro. Life Ins. Co.*, Civ. A. No. 01-262, 2006 WL 2623230, at *3

(W.D. Pa. Sept. 12, 2006) (basing the court's determination of the reasonable hourly rate on fact that "no novel or difficult questions [were] involved" and it was "not a complex case").

Turning to the reasonableness of the time expended by CPC's attorneys, "when an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard uncontested affidavits filed by a fee applicant." *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985), *vacated*, 478 U.S. 1015 (1986), *reinstated by* 807 F.2d 49 (3d Cir. 1986). The principle articulated in *Cunningham*, which was decided in the statutory fees context, applies equally to a contempt proceeding. *Sullivan v. Carrigan*, Civ. A. No. 86-3696, 1988 WL 48557, at *2 n.4 (E.D. Pa. May 12, 1988). Because CPC's attorneys have submitted specific time records detailing their work on this contempt proceeding along with their affidavits, and Dominic has not challenged the reasonableness of the number of hours expended, the Court accepts CPC's account of its time expended on the matter. As such, CPC is entitled to recover all of the hours it requested for O'Malley (18.3) and Snyder (18.1) at the Court's designated rate of $305 per hour, for a total of $11,102. (Pet. for Fees ¶¶ 28, 30.)

In addition, CPC has requested an award for 11.4 hours of work by a paralegal at an hourly rate of $120. (O'Malley Decl. ¶ 13.) This rate is within the range in the CLS Schedule, the paralegal's hours are adequately documented, and Dominic has not challenged the rate or hours expended, so CPC will recover the $1368 it requested. (*See* Billing Records.) Finally, CPC requests costs of $889.25, consisting of legal research charges, purchases of food at Tony's Place as part of the investigation, and a courier service; Dominic has also not objected to these costs,

7

and CPC will recover them in order to be made whole for Dominic's violations of the Stipulated PI. (Pet. for Fees ¶ 33; Snyder Decl. Ex. A [Costs Table].)

**III.     CONCLUSION**

For the foregoing reasons, the Court awards CPC $12,470 in fees and $889.25 in costs. An Order consistent with this Memorandum will be docketed separately.