IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CPC PROPERTIES, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DOMINIC, INC., | : | No. 12-4405 |
| Defendant. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                October 9, 2013

CPC Properties, Inc. ("CPC") sued Dominic, Inc. ("Dominic"), d/b/a Tony's Place, for trademark infringement and other related claims based on Dominic's placement of a crab image next to the word "fries" in an advertisement for its seasoned fries, on its menus, and on its website. CPC sells seasoned fries under the trademark CRAB FRIES®. The Court entered judgment in favor of CPC on a number of its claims. Now before the Court is CPC's Application for Damages and Other Relief, and Motion for Attorneys' Fees. For the following reasons, the Court denies CPC's requests for damages and attorneys' fees.

**I.     BACKGROUND**

The Court previously recited the factual and procedural history of this case. *See CPC Props., Inc. v. Dominic, Inc.*, Civ. A. No. 12-4405, 2013 WL 4457338, at *1-2 (E.D. Pa. Aug. 21, 2013). As such, the Court will only set forth the facts necessary to decide this motion.

CPC owns and operates the CHICKIE'S AND PETE'S chain of sports bars and kiosks that operate in and around the Philadelphia area. CHICKIE'S AND PETE'S owns the trademark CRAB FRIES®, under which it markets and sells its seasoned french fries. Dominic owns and

operates a family-style Italian restaurant in Northeast Philadelphia called Tony's Place. In 2000, CPC's predecessor-in-interest sued Dominic for using the words "CRAB FRIES" in marketing its seasoned french fries. The parties settled that dispute in 2002, and Dominic ceased using the terms "CRAB" or "CRAB FRIES" to describe its fries.

On August 3, 2012, CPC sued Dominic, asserting that Dominic engaged in trademark infringement, false designation of origin, common law service mark infringement, unfair competition, unjust enrichment, and trademark dilution by using a crab image next to the word "FRIES" in an advertisement, on its menus, and on its website. Less than a week after CPC filed the Complaint, the Court entered a preliminary injunction, to which the parties stipulated ("Stipulated Preliminary Injunction"), which ordered Dominic to cease using the crab image in connection with its fries. However, subsequent investigation by CPC revealed that Dominic had not fully removed the crab image from its website, some menus, and the receipts given to customers, though it had made some effort to obscure the crab images on its menus and had not used the image in advertisements. The Court held Dominic in contempt of the Stipulated Preliminary Injunction and awarded attorneys' fees to CPC for litigating that issue.

On May 1, 2013, CPC moved for a judgment on the pleadings. Dominic filed an inadequate response. Therefore, the Court accepted as true the facts contained in CPC's motion. The Court entered judgment in favor of CPC on the claims of: (1) trademark infringement under § 32 of the Lanham Act; (2) unfair competition and false designation of origin under § 32 of the Lanham Act; (3) common law trademark infringement; (4) common law unfair competition and false designation of origin; and (5) trademark dilution in violation of Pennsylvania law. *CPC Props., Inc.*, 2013 WL 4457338. Judgment was entered against CPC on the unjust enrichment claim. *Id.* CPC now asks this Court, pursuant to the Lanham Act and the Pennsylvania Anti-

Dilution Statute, to (1) award damages to CPC by disgorging Defendant's profits and trebling those damages; and (2) designate this as an "exceptional case" and award attorneys' fees to CPC.

## II. DISCUSSION

### A. Damages

The Lanham Act and the Pennsylvania Anti-Dilution Statute contain similar provisions describing when damages are appropriate. Indeed, damages under the Lanham Act and the Pennsylvania Anti-Dilution Statute are analyzed according to identical standards. *See Strick Corp. v. Strickland*, 162 F. Supp. 2d 372, 378 n.10 (E.D. Pa. 2001) ("As the federal and state dilution statutes contain virtually identical provisions, they are subject to the same analysis."); 15 U.S.C. § 1117 (describing the circumstances in which damages are appropriate for violations of the Lanham Act or the federal anti-dilution statute). However, recovery under both statutes for the same course of misconduct would be improper. *See Granger v. One Call Lender Servs., LLC*, Civ. A. No. 10-3442, 2012 WL 3065271, at *3 (E.D. Pa. July 26, 2012) (recognizing the "bar to double recovery in the intellectual property context" in a case where the plaintiff sought damages under the Copyright Act, Lanham Act, and Pennsylvania Unfair Trade Practices and Consumer Protection Law). A plaintiff who prevails in demonstrating trademark infringement or unfair competition in violation of the Lanham Act, or a willful violation of the federal anti-dilution statute, is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117.

CPC asks only for the Court to award damages in the form of disgorging the profits Dominic enjoyed as the result of its use of the crab image. (Pl.'s Application for Damages and Other Relief [Pl.'s App.] at 2.) Damages are not always an appropriate remedy for trademark infringement or dilution. *See Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274-75

(3d Cir. 1975) ("If the record in the district court contains no evidence of actual damage or actual profit in dollars and cents no monetary award may be made . . . and the trademark owner must be content with injunctive relief."). Indeed, disgorgement of profits as a remedy is available only "if the defendant is unjustly enriched, if the plaintiff sustained damages, or if an accounting is necessary to deter infringement. These rationales are stated disjunctively; any one will do." *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 178 (3d Cir. 2005); *see also Marshak v. Treadwell*, 595 F.3d 478, 495 (3d Cir. 2009). Thus, the Court will first decide whether there is a justification for disgorging Dominic's profits, and then will calculate the extent to which Defendant profited from the infringing behavior.

*1. Appropriateness of disgorging profits*

In deciding whether there is a justification for disgorging a defendant's profits under § 1117, courts in the Third Circuit balance the following factors, among others: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Quick Techs. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002); *see also World Entm't Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012); *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005). Whether the defendant acted willfully "is an important equitable factor but not a prerequisite to such an award." *Banjo Buddies, Inc.*, 399 F.3d at 171.

*i. Intent to confuse or deceive*

The first factor is whether Defendant intended to confuse or deceive. In finding that Dominic's use of the crab image amounted to trademark dilution as a matter of law, the Court accepted as true CPC's assertion that the use of the crab image "wrongfully and intentionally

4

implied an affiliation between Dominic and CPC." *CPC Props.*, 2013 WL 4457338, at *10. The evidence also demonstrates that Dominic knowingly infringed on CPC's trademark, as Tony's Place continued to use the crab image after it agreed to the terms of the Stipulated Preliminary Injunction. However, while there is evidence that Defendant intentionally tried to trade on the goodwill associated with Plaintiff's trademark, Dominic did not go to great lengths to cause deception or obfuscate the source of the fries. Thus, the acts in this case are generally less culpable than those in a case of counterfeiting, *see, e.g.*, *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 229 (3d Cir. 2003), or a case in which one product was intentionally manufactured to look identical to another, *see, e.g.*, *Banjo Buddies, Inc.*, 399 F.3d at 175. This factor weighs in favor of disgorging Plaintiff's profits, albeit slightly.

### ii. Diverted sales

The second factor, whether sales have been diverted, weighs against awarding damages. There is no evidence to suggest, nor is it argued by Plaintiff, that that any CHICKIE'S AND PETE'S location suffered from lost sales during Defendant's period of infringement. Plaintiff does assert that it is "reasonable" that a consumer would be diverted to Tony's Place because of the use of the crab image. (Pl.'s App. at 8.) However, this is not the correct standard. Plaintiff keeps detailed financial records regarding the sales of its CRAB FRIES®, and thus has information with which it could have actually demonstrated that it lost sales during the period of infringement. Because it has failed to do so, the Court concludes that CPC did not suffer from lost sales. This factor weighs against awarding damages.

### iii. Adequacy of other remedies

The third factor that the Court will consider is the adequacy of other remedies. As noted above, a Stipulated Preliminary Injunction was entered in this case. Defendant asserts that it is

currently in compliance with the injunction. (Def.'s Opp'n Ex. A [Mallamaci Aff.] at 4.) CPC indicates that it will seek a permanent injunction, (Pl.'s App. at 7.), and Dominic indicates that it would not oppose Plaintiff's request, (Mallamaci Affidavit at 4-5.). Thus, it appears that a permanent injunction is an appropriate remedy.

CPC asserts that injunctive relief alone would be inadequate, in part because the 2000 lawsuit between CPC's predecessor-in-interest and Dominic resulted in an injunction that did not prevent Dominic's 2012 infringement. (Pl.'s App. at 8-9.) However, there is no indication that the previous injunction forbade using a picture of a crab—as opposed to the term CRAB FRIES®—to advertise seasoned french fries, and Defendant asserts that be believed this behavior to be innocent before the instant litigation was commenced. The Court recognizes that Defendant violated the terms of the Stipulated Preliminary Injunction. However, that violation alone, in the context of this case, is not enough to demonstrate that injunctive relief would be an inadequate remedy, as Defendant is currently in compliance with the injunction and has indicated that it will not oppose the entry of a permanent injunction. Thus, this factor weighs slightly against awarding damages.

> iv. *Plaintiff's delay*

The fourth factor is whether Plaintiff delayed unreasonably in asserting its rights. Plaintiff did not delay in bringing this case, so this factor weighs in favor of awarding damages.

> v. *Public interest in making the misconduct unprofitable*

The fifth factor is the public interest in making the misconduct unprofitable. As a general matter, the public has a great interest in making trademark infringement unprofitable. However, as the Court will discuss more fully below, Dominic's trademark infringement does not seem to have been profitable at all. The cases cited by CPC to support is argument that this factor weighs

6

in favor of awarding damages are dissimilar from the present case because sales in those cases were actually or likely diverted from the plaintiffs. *See Banjo Buddies, Inc.*, 399 F.3d at 175-76; *Darius Intern., Inc. v. Young*, Civ. A. No. 05-6184, 2008 WL 1820945, at *52-53 (E.D. Pa. Apr. 23, 2008). However, as the Court noted above, there is no evidence that sales were diverted in this case. As the conduct in this case appears to already be unprofitable, there is no indication that the public interest in making the conduct in this case unprofitable is strong.

### vi. *Palming off*

The sixth factor is whether this is a case of "palming off," or misrepresenting the product of another as one's own. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003). The Court accepted this allegation as true for the purposes of deciding Plaintiff's motion for judgment on the pleadings due to Defendant's lack of response. However, the Court does not weigh this factor heavily during its equitable determination of whether damages are appropriate in this case, as the evidentiary support for this conclusion is relatively thin.

After considering each of the relevant factors, the Court concludes that there is no justification for disgorging Dominic's profits in this case. CPC did not suffer damage; Dominic did not profit; and damages are not necessary to deter future infringement. *See Banjo Buddies, Inc.*, 399 F.3d at 178. This was not a case in which Defendant engaged in an "elaborate shell game" in order to avoid its obligation not to use the term "crab fries." *Compare Marshak*, 595 F.3d at 495. Nor is this a case in which Defendant meticulously crafted its product and advertisements to be identical to a trademarked product. *Compare Banjo Buddies, Inc.*, 399 F.3d at 175. Instead, Defendant used an image of a crab near the word "fries" on a single advertisement, its website, and its menus. When Plaintiff brought this lawsuit, Defendant

immediately agreed to cease using the crab image. The absence of any justification for damages in this case makes it one in which injunctive relief, not damages, is the appropriate remedy.

   2.   *Calculation of profits*

Because the Court does not believe that disgorgement of Dominic's profits would be an appropriate remedy in this case even if Dominic profited from the infringement, the Court need not calculate Dominic's profits. However, because the unprofitability of Dominic's conduct informed the Court's earlier conclusion that there was not a great public interest in making the infringement unprofitable, the Court will lay out its analysis in concluding that Dominic did not profit from its use of the crab image.

The plaintiff bears the burden of proving the defendant's ill-gotten profits. 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."); *see also Banjo Buddies, Inc.*, 399 F.3d at 176. "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case . . . ." 15 U.S.C. § 1117. Courts have considerable discretion in fashioning an appropriate remedy under § 1117. *See Banjo Buddies, Inc.*, 399 F.3d at 176; *Darius Int'l, Inc. v. Young*, Civ. A. No. 05-6184, 2008 WL 1820945 (E.D. Pa. Apr. 23, 2008). The principle guiding that discretion is that the damages award "shall constitute compensation and not a penalty." 15 U.S.C. § 1117.

The Court agrees with Plaintiff that its ability to prove Defendant's profits was frustrated by Defendant's lack of response to interrogatories and Defendant's dearth of financial information relating to the sales of its seasoned fries. (Pl.'s App at 5, 10-11.) However, Defendant has provided financial information from which the Court can estimate its profits. *See*

*id.* at 176 ("Banjo Buddies' burden of proof was satisfied by Renosky's accountant's financial report.").

In this case, any reasonable method of estimating Defendant's profits leads to the same conclusion: Defendant did not profit from its use of the crab image. Tony's Place is an Italian food restaurant which has been losing money for approximately ten years. (Mallamaci Aff. at 2.) It derives 68% of its revenue from food sales and the remainder from alcohol sales. (*Id.*) The seasoned fries at the center of this case are small potatoes. They are not a popular menu item and are one of over one hundred dishes offered by Tony's Place. Def.'s Opp'n Ex. C [Tony's Place Menu].) An order of seasoned fries costs $4.80. (*Id.*) Tony's Place does not keep itemized records on the profits derived from each food item. (Def.'s Opp'n Ex. B [Financial Records].) However, this is not a case where incomplete record-keeping makes it difficult for the Court to calculate actual damages. *Compare Banjo Buddies, Inc.*, 399 F.3d at 176 (stating that courts may "us[e] an alternative method to estimate [a defendant's] profits" when exact information is not available"); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) ("[D]oubts about actual damages will be resolved against party who evades ascertainment of actual damages.") (citation omitted). Here, the Court has no doubt about the amount of actual damages; there is ample evidence that Defendant simply did not profit from the use of the crab image.

### B. Attorneys' Fees

The Lanham Act provides, in "exceptional cases," a statutory exception to the general rule against awarding attorneys' fees to the prevailing party. 15 U.S.C. § 1117. Designating a case "exceptional" is a two-step process. *Green v. Fornario*, 486 F.3d 100, 103-04 (3d Cir. 2007). First, the Court must determine whether Defendant engaged in culpable conduct. Courts

have found conduct culpable that was undertaken maliciously, knowingly, fraudulently, or in bad faith. *See Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991); *Darius Int'l, Inc.*, 2008 WL 1820945, at *54. Misconduct during litigation may also satisfy this requirement. *See Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 282 (3d Cir. 2000) (holding that the party had engaged in culpable conduct by trying to "bury" and "crush" its opponent by filing duplicative and frivolous complaints and not limiting its litigation to the merits of the case). If the Court finds that Defendant engaged in culpable conduct, it then turns to the second step of the inquiry and "decide whether the circumstances are 'exceptional' enough to warrant a fee award." *Green*, 486 F.3d at 103-04. The Third Circuit has made clear that "the term 'exceptional' is not . . . a throwaway" but rather an appropriate label when a court "finds a defendant's conduct particularly culpable." *See id.* at 100. In determining whether a case is exceptional, the courts consider the "totality of the circumstances," including factors such as the "closeness of the liability question and whether plaintiff suffered damages." *Id.* (citing Ferrero, 952 F.2d at 49).

As noted above, there is evidence that Dominic acted knowingly in continuing to use the crab image after the entry of the Stipulated Preliminary Injunction. Additionally, for the purposes of deciding Plaintiff's motion for judgment on the pleadings, the Court accepted as true Plaintiff's assertion that Defendant willfully implied an affiliation between its seasoned fries and CHICKIE'S & PETE'S CRAB FRIES®. Plaintiff also asserts that the Court should consider Defendant's "dilatory" litigation tactics to be culpable conduct. (Pl.'s App. at 14-15.) Though Defendant's former attorney missed filing deadlines, that attorney has since been replaced, and there is no indication that the conduct was intended to cause delay or frustration. *Compare Securacomm Consulting, Inc.*, 224 F.3d at 282. The Court does not consider Defendant's

behavior during litigation to be culpable conduct, but it finds that Defendant engaged in knowing and willful trademark infringement. Thus, Defendant committed some culpable acts.

However, Defendant's culpable conduct does not make this case exceptional. The liability issues in this case were not fully litigated, as Plaintiff was awarded a judgment on the pleadings based on Defendant's failure to properly respond to Plaintiff's motion. However, based on the limited facts before the Court, there is nothing to indicate that Dominic's conduct was "particularly culpable." *See Green*, 486 F.3d at 100. This case is almost remarkably run-of-the-mill. It not the result of an elaborate scheme or plan of deception. Dominic's level of culpability was relatively low, and much of its culpable conduct occurred when it violated the Stipulated Preliminary Injunction. The Court already awarded attorneys' fees to Plaintiff for litigating that issue, and it will not award additional attorneys' fees for litigating the remainder of the case because it does not believe that this case is exceptional.

## III. CONCLUSION

The Court finds that Defendant did not profit from its infringing conduct, and that disgorgement of Defendant's profits is not an appropriate remedy in this case. The Court also declines to award attorneys' fees to Plaintiff because this is not an "exceptional" case within the meaning of 15 U.S.C. § 1117. An Order consistent with this Memorandum will be docketed separately.